FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA** 99 JUL 27  AM 9: 22
**SOUTHERN DIVISION**

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| ASMAR A. BARAKA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.   CV 98-J-1400-S |
| | ) | |
| BLUE CIRCLE CEMENT COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTERED**

JUL 2 7 1999

## MEMORANDUM OPINION

This cause comes before this Court on Defendant's motion for summary judgment

(doc. 25).

### Undisputed Material Facts

Plaintiffs are African-American males that Defendant hired as strike replacement

workers at its Calera, Alabama, plant in August 1994.  Said plant was divided into two

main portions, one which processed, packaged and distributed concrete ("the concrete

side") and one which processed, packaged and distributed lime ("the lime side").

Initially, Plaintiff Asmar Baraka ("Baraka") was assigned to a packaging position on the

lime side.  His job involved working in the lime "pack house" where lime was packed

into bags.  Eventually, Baraka began work as a bulk loader on the lime side where his

primary functions were to operate machinery which load lime in bulk onto trucks

1

39

operated by Defendant's customers and to weigh said trucks prior to their exiting the plant. During the time that Baraka worked on lime side of Defendant's plant, no white individuals were assigned to work in the lime pack house and only two were assigned to work as bulk loaders. When Baraka questioned co-workers regarding the reasons why all of the workers in the lime pack house and as bulk loaders were black, he was told that the lime was too harsh on white skin and that black skin could handle it better.

After Baraka became a bulk loader, he began having trouble with truck drivers and, had verbal altercations with several of them. Baraka reported these incidents to his supervisors. Baraka contends that he never provoked any of the incidents and that Defendant never took remedial action regarding the incidents he reported. However, Defendant contends that remedial action was taken albeit not the specific action that Baraka wanted.

In 1997, Baraka applied for a position as pack house coordinator. Mr. Baraka was considered for said position and was one of the two finalists for the job. However, said position was ultimately awarded to Tony Gill, a white male. Defendant contends that Gill was better qualified and, specifically, that he had a better rapport with truck drivers and co-workers than Baraka did. Baraka disagrees and feels that he should have received said job.

In September 1997, Baraka had another confrontation with a truck driver over spilled lime. Baraka was loading the driver's truck and, due to an equipment

2

malfunction, overfilled the truck.  Eventually, Baraka and the shift foreman were able to

stop the flow of lime but not before the truck was covered with lime.  Baraka began to

shovel the area around the truck, the truck driver climbed on top of the truck to begin

shoveling the lime from the top of the truck, and the shift foreman left to retrieve a handle

for a push broom.  While the foreman was gone, the driver shoveled lime onto Baraka

who was on the  ground below.  Baraka called out to the driver and asked him why he

was dropping lime on him.  The trucker did not answer.  Baraka spoke to the driver

several more times but the driver never acknowledged Baraka's protests.  Finally, Baraka

threatened to "whoop" the driver for throwing the lime onto him.  Defendant claims

Baraka was holding a shovel at the time the threat was made.  The shift foreman arrived

shortly thereafter and diffused the situation sending Baraka to clean the lime off of

himself.  Several weeks later, Baraka was terminated for threatening the driver.

The other Plaintiff in this action, Willie Hill, was initially assigned a position as a

raw mill worker on the concrete side.  (Hill depo. at 185, 191.)  In December 1998, said

position was terminated by Defendant and Hill was transferred to the lime side of the

plant.  Throughout his employment with Defendant, Hill sought opportunities for

advancement applying for several other jobs within the plant.  Specifically, Hill applied

for the same pack house coordinator for which Baraka applied.  As stated above, that

position was awarded to Tony Gill.  In addition, Hill applied for two shift foreman

positions in the summer of 1997 that were eventually awarded to Greg Truesdale and

3

James Broadhead, both white men.  Defendant contends that each of these individuals

was more qualified for the respective positions than Hill was.  Hill disagrees arguing that

he should have been placed in one of these jobs.

### Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact that the

moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment

standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial.  In such a situation, there can be no genuine issue as
> to any material fact, since the complete failure of proof concerning an
> essential element of the non-moving party's case necessarily renders all
> other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23.  The party asking for summary judgment always bears

the initial responsibility of informing the court of the basis for its motion and identifying

those portions of  the pleadings or filings which it believes demonstrates the absence of a

genuine issues of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party

to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to

4

interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require

5

submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.);

citing *Anderson*, 47 U.S. at 251-252.

## Analysis

### I.       *Baraka's claims*

#### A.       *Hostile work environment*

Baraka claims that he was subjected to a racially hostile work environment

because he had several racially-charge confrontations with various truck drivers and

Defendant did not adequately reprimand or discipline the truck drivers for making racial

remarks to Baraka. "To prove a prima facie case of hostile working environment,

[Baraka] must establish that: (1) [he] belongs to a protected class; (2) [he] was subjected

to unwelcome racial harassment; (3) *the harassment was based on race*; (4) the

harassment affected a term, condition, or privilege of employment; and (5) respondeat

superior." *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala. 1994) (citing

*Henson v. Dundee*, 682 F.2d 897, 903-05 (11th Cir.1982)) (emphasis added). In addition,

he must prove that the alleged harassment was so severe and pervasive as to effect a term

or condition of his employment thereby creating a hostile working environment. *Harris*

*v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367 (1993). As a black male, Baraka is a

member of a protected class. Baraka claims that he was subjected to unwelcome racial

harassment by various truck drivers who worked for Defendant's customers.

6

Baraka's testimony substantiates several confrontations between him and drivers.[1]

Taking the evidence in the light most favorable to Baraka, these encounters were

unwelcome and affected a term or condition of his employment in that he was required to

work with individuals who were often hostile toward him.[2]

    With these elements established, Baraka must next demonstrate that his

---

[1]    Defendant contends that Baraka's EEOC claim regarding was not timely filed insofar as it addressed the allegedly hostile work environment created by truck drivers. *Cf. Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648 (11th Cir. 1993). Plaintiff contends that said violation continued throughout Baraka's employment and, therefore, the EEOC claim was timely filed within 180 days of the last incident which occurred September 27, 1997. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792 (11th Cir. 1992). There is clearly a "distinction ... between the present effects of a one-time violation [*i.e., Ross*] ... and the continuation of the violation into the present" (*i.e., Beavers*). In the instant case, however, this court need not resolve the time-bar issue with respect to Baraka's hostile work environment. Summary judgment is due on the merits of said claim and, therefore, withholds its ruling on the procedural time-bar issue in deference to a resolution on the merits.

[2]    The drivers who allegedly created the hostile work environment were not Blue Circle employees or agents. Baraka contends that Defendant may still be liable for the actions of said third parties if Defendant knew of the alleged harassment taking place at its plant and did not take adequate measures to stop it. Baraka bases his argument on *Vance v. Southern Bell Telephone & Telegraph Co.*, 863, F.2d 1503 (11th Cir. 1989) in which the court found that a non-supervisory employee could create a hostile work environment if management knew or should have known of the situation and did not take appropriate action. *See also Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982). However, Plaintiff cites no case where a non-employee/third-party has been held liable for creating a hostile work environment.

    It is undisputed that Baraka consistently reported his confrontations with drivers to Blue Circle management including details about the racially-charged nature of some of the incidents. The parties dispute the adequacy of the steps taken by Blue Circle to alleviate the situation, and Defendant contends that it cannot be held liable for third party acts. (*See Defendant's reply in support of it's motion for summary judgment*, doc. 31 at 6-7.)

    If this were the only weak portion of Plaintiff's *prima facie* case, this court would feel compelled to resolve this apparently novel issue. However, Plaintiff is unable to establish the third prong of his *prima facie* case (*i.e.,* that the harassment he experienced was based on race). Thus, this court reserves ruling on the *respondeat superior* issue because such a ruling is not necessary to a resolution of this case.

7

confrontations with the truck drivers were based on **race**. Baraka fails to demonstrate this

essential element of his claim. Throughout his deposition, Baraka recounts several

incidents where he came to words and, sometimes, to blows with truck drivers. However,

race appears to have been a factor in only a small number of the situations.


The first incident Baraka relates occurred on November 11, 1994. Baraka was

working as a bulk loader when an unnamed white driver's truck was overfilled.

(Baraka's depo., vol. I, at 116.) The driver cursed at Baraka and called him "all kind of

names". *Id.* However, there is no evidence that the driver used any racially-charged

language toward Baraka.

The next situation occurred on February 17, 1995, when a black truck driver

named Johnny Watkins became angry with Baraka. (*Id.* at 125-131.) Watkins's truck

was overweight, but Watkins wanted Baraka to allow him to leave the plant anyway. (*Id.*

at 127-128.) Baraka refused and Watkins launched a verbal assault on him. Watkins

"began to ... verbally abuse Baraka], curse [him], threaten [him].... And he stood there in

the door and continued to just give me this barrage of profane language and just

everything, and told me I needed to take my black explicit [sic] back to Africa...." (*Id.* at

128.) Baraka pointed a pen at Watkins and told Watkins to stop cursing at him. Watkins

"slapped [Baraka's] hand back" and the situation escalated. (*Id.*) A white truck driver,

Mr. Bohanan, grabbed Watkins by the arm and "pulled him out." (*Id.* at 129-130.)

8

A third confrontation between Baraka and a truck driver occurred on November 18, 1996. (*Id.* at 178.) On said date, Plaintiff was loading pebble lime into the truck of George Garrett, a black driver. (*Id.* at 178, 183-185.) The filling process did not go as Garrett wanted, he got angry, and he began calling Baraka "all kinds of explicits [sic]". (*Id.* at 178-179.) Garrett popped the clutch of his truck while Baraka was still on top of the truck almost throwing Baraka off. (*Id.* at 178-180.) When Baraka refused to return to the top of Garrett's truck to finish the loading process, Garrett indicated that he would be waiting outside the gate when Baraka's shift ended to "finish this". (*Id.* at 180-182.) Baraka then weighed Garrett's truck, and Garrett signed his bill. (*Id.* at 181-182.) Baraka threw the pen back at Baraka and hit him with it. (*Id.*) There is no mention in Baraka's description of this incident of racially-charged language.

A fourth incident occurred on December 4, 1996, when Baraka refused to allow Daniel Flowers, a white truck driver to load his own truck. (*Id.* at 187-188, 190-191.) Flowers returned to his truck to wait in line to be loaded by a Blue Circle employee. (*Id.* at 188.) At that time Flowers commenced a conversation with another white driver, Rodney Thomas, via CB radio. (*Id.* at 188, 190.) Baraka did not hear, this conversation; however, it was overheard by Tim Nix, a black driver also waiting in line to be loaded. (*Id.* 188-190.) When it came Nix's turn to be loaded, he related the conversation to Baraka. (*Id.* at 189.) In the alleged conversation, Flowers and Thomas referred to Baraka using racial epithets and planned to shoot Baraka, hang him, or cover him in lime and

9

urinate on him.  (*Id.* at 187-189.)

On January 3, 1997, another confrontation occurred.  This one was between Baraka and a white driver known as "Papa Bear."  (*Id.* at 221-222.)  On that date, Baraka alleges that Papa Bear attempted to steal lime from the plant trying to run Baraka over in the process.  (*Id.* at 222-223.)  Baraka alerted Blue Circle security who called the police. (*Id.* at 221-223.)  This situation escalated on January 17, 1997, when Papa Bear returned to the plant to be loaded.  (*Id.* at 227.)  At that time, Papa Bear cursed at Baraka and threatened to assault him if he ever called the police again.  (*Id.* at 227-228.)  Again, there is no evidence that either incident involving Papa Bear contained any racial overtones.

The final situation, which resulted in Plaintiff's termination, occurred on September 27, 1997.  (Baraka's depo., vol. II, at 7-17.)  On that date, Baraka had another confrontation with a white truck diver, Leland Butler (Baraka's depo., vol. II, at 7-20). The incident began when an equipment malfunction caused the bulk-loading machine to overfill Butler's truck.  (*Id.* at 8-9.)  By the time Baraka and his foreman, Peter Needley, were able to manually stop the flow of lime, a massive spill had occurred depositing lime on top of the truck and on the ground around the truck.  (*Id.* at 9-11.)  Baraka and Needley retrieved two shovels and a push broom which did not have a handle.  (*Id.* at 12-13.) Baraka took one shovel and gave the other one to Butler while Needley went to obtain a handle for the push broom.  (*Id.* at 13.)  Baraka began shoveling lime away from the truck on the ground.  (*Id.* at 14.)  Butler climbed to the top of the truck and started removing the

10

lime from that location. (*Id.*) During this process, Butler shoveled lime down onto

Baraka who was working below. (*Id.*) Baraka got out of the way just before a second

shovelful of lime landed where he had been standing. (*Id.* at 14-15.) Baraka asked Butler

why he was dropping lime onto him. (*Id.* at 15.) Butler did not respond. (*Id.*) Instead,

he continued to shovel lime from the top of his truck. (*Id.*) Baraka questioned Butler's

actions a second time and again received no response. (*Id.*) Finally, Baraka climbed to

the top of Butler's truck, positioned himself in front of Butler, and asked Butler a third

time why he shoveled lime onto Baraka. (*Id.* at 15-16.) Again, Butler did not respond.

(*Id.* at 16.) At that point, Baraka threatened to "whoop" Butler for pushing lime onto

him.[3] (*Id.* at 16.) Butler responded verbally to this statement, and he and Baraka began to

argue. (*Id.* at 16-17.) Before the situation could escalate further, Needley returned to the

scene. (*Id.* at 16-17.) Needley diffused the situation by having Baraka leave to clean the

lime off of himself. (*Id.* at 17.)

On September 29, 1997, Baraka filed a police report about the incident alleging

that the trucker had harassed him. (*Id.* at 23-24.) When he reported to work later that

day, Baraka was reprimanded for the incident. (*Id.* at 29.) On September 30, 1997,

Baraka was terminated for the statement made to Butler. (*Id.* at 37.) Although this

---

[3]     Defendant contends that Baraka was holding a shovel at the time he threatened
Butler. Baraka does not offer evidence to counter this. Whether or not Baraka was holding a
shovel at the time of his verbal threat against Butler is immaterial to the instant analysis. Baraka
undisputably made a threat of physical force. Said threat alone is sufficient for the analysis at
hand.

11

situation resulted in Baraka's termination, it is noteworthy that there is no indication of racial hostility against Baraka during this incident.

The Supreme Court has held that, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' [*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405 (1986)], that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' *id.*, at 67, 106 S.Ct., at 2405 (internal brackets and quotation marks omitted), Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993). There is evidence that only two of the confrontations between Baraka and drivers were racially-charged. These two incidents occurred almost two years apart – the first on February 11, 1995, and the second on December 4, 1996. Such infrequent harassment is not covered by Title VII's prohibition against racially hostile work environments. (*Id.*) Therefore, Baraka fails establish his *prima facie* case of a hostile work environment in violation of Title VII. No genuine issues of material fact remain. Summary judgment is due to be granted in favor of Defendant on Baraka's hostile work environment claim.

### B.     Retaliation

Baraka claims that his termination on September 30, 1997, violated Title VII because it was in retaliation for protected activities. In order to establish a *prima facie* case of retaliation, Baraka must establish that (1) he engaged in a "statutorily protected

12

activity; (2) [Defendant] ... took an adverse employment action against him; and (3) there
is a causal connection between the protected activity and the adverse action.  The third
prong is satisfied if the evidence shows that the protected activity and the adverse action
are not totally unrelated." *Berman v. Orkin Exterminating Co., Inc.*, 160 F. 3d 697, 701-
702 (11th Cir. 1998).

 Throughout his employment with Defendant, Baraka complained to his supervisors
on several occasions about what he perceived as racist actions by truck drivers.  In
August, 1997, Baraka filed an EEOC complaint alleging that he had been subjected to a
racially hostile work environment.  (Baraka's depo, vol. I, at 264.)  Baraka's complaints
to management and filing of the EEOC charge constitute statutorily protected activity, the
first prong of his *prima facie* case.  On September 30, 1997, Defendant terminated
Baraka's employment.  Thus, Baraka demonstrates the second prong of his *prima facie*
case.  To support of the third prong of his *prima facie* case, Baraka points to the affidavit
of Dewayne Calhoun, a black co-worker.  Calhoun states, "I also know that they were
after Asmar Barakas [sic] and they wanted him fired because he had previously
threatened to bring discrimination charges against them."  (Calhoun Affidavit at ¶ 6.)
Calhoun gives no facts or other evident to explain how he "know[s]" that Defendant
"[was] after" Baraka.  However, said statement does present some evidence regarding
Defendant's motives for terminating Baraka.  In addition, it is suspicious that Baraka was
terminated only a few weeks after filing his EEOC complaint.  The Eleventh Circuit has

noted, "Where termination closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision. *See, e.g., Bechtel Constr. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir.1995) (inference permissible where employee questioned safety procedures in radiation control area of plant)." *Mize v. Jefferson City Bd. of Ed.*, 93 F.3d 739, 745 (11th Cir. 1996).[4] The timing of Baraka's termination combined with Dewayne Calhoun's affidavit raises a genuine issue of material fact regarding Defendant's motive in terminating Baraka. Thus, Baraka has established his *prima facie* case.

In response to Baraka's *prima facie* case, Defendant argues that it was justified in terminating Baraka for cause. Defendant relies upon the facts surrounding the September 27, 1997, confrontation between Baraka and Leland Butler (*see* discussion *supra*) where Baraka threatened to "whoop" Butler for pushing lime onto him. When Baraka reported to work on September 29, 1997, he was reprimanded for the incident. (*Id.* at 29.) On September 30, 1997, Baraka was terminated for threatening Butler. (*Id.* at 37.) Baraka argues that Defendant's legitimate, articulated reason for terminating him was a pretext for retaliation. Baraka attempts to demonstrate pretext by relating "talk within the plant" about a white Blue Circle employee who had a confrontation with a black truck

---

<sup>4</sup>          This court has considered the timing of Baraka's termination in relation to his EEOC complaint. However, it is noteworthy that the *Mize* court also stated, "*It does not follow, however*, that *every* time a person engages in constitutionally protected activity within a short time prior to an adverse employment decision that an inference may reasonably be drawn that they were related." *Mize* at 745 (emphasis added).

14

driver. (Baraka's depo., vol. III, at 40-44). Baraka has no first hand knowledge about

said incident and does not even know the names of the individuals involved. *Id.* Rather,

he testified, "I don't know the essence of it. I just vaguely remember when it

happened....What I'm saying I remember at the time it happened. I remember hearing

about it." *Id.* at 43. The substance of his knowledge of the alleged event is that "this

particular Blue Circle employee was white and had a confrontation with a black driver

that was hauling product for Blue Circle and the driver complained to Blue Circle

management about it and Chris continued to work." *Id.* at 43-44. Baraka "heard some

names were called, but ... – like I say, I didn't hear it and it was rumored, you know." *Id.*

at 44.

Since Baraka uses rumor as the basis for his knowledge about the alleged incident

between a white Blue Circle employee and a black truck driver on rumor, it is not proper

evidence.

> [I]n regards to plaintiff's claim under Title VII of the Civil Rights Act of
> 1964, it is well established that a Title VII plaintiff opposing a motion for
> summary judgment must present significantly probative evidence on the
> issue of discrimination to avoid summary judgment. *Young v. General
> Foods Corp.,* 840 F.2d 825 (11th Cir.1988), *cert. denied,* 488 U.S. 1004,
> 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Grigsby v. Reynolds Metals Co.,*
> 821 F.2d 590 (11th Cir.1987). Reliance solely upon speculation and
> unsubstantiated hearsay constitutes a failure to meet this burden. *See, e.g.,
> Palucki v. Sears, Roebuck and Co.,* 879 F.2d 1568 (7th Cir.1989) ("a party
> to a lawsuit cannot ward off summary judgment with an affidavit or
> deposition based on rumor or conjecture"); *Benson v. Vermont American
> Corp.,* 723 F.Supp. 1439 (M.D.Ala.1988) ("inadmissible evidence offered
> in the form of a deposition, cannot be considered by the court"), aff'd

without opinion, 874 F.2d 820 (11th Cir.1989);  *Williams v. Housing Authority,* 709 F.Supp. 1554 (M.D.Fla.1988) ("the court cannot base direct-evidence analysis on hearsay testimony by plaintiff"), aff'd without opinion, 872 F.2d 434 (11th Cir.1989).

*Plaisance v. Travelers Ins. Co.*, 880 F. Supp. 798, 804 (N.D. Ga. 1994); *see also Webb v. R&B Holding Co., Inc.,* 992 F. Supp. 1382  (S.D. Fla. 1998).  Without Baraka's testimony, there is no evidence that such a similar event occurred.  Thus, Baraka fails to demonstrate that Defendant's legitimate, articulated reason was a pretext for discrimination.[5]  No genuine issue of material fact remains regarding this claim. Therefore, summary judgment is due to be granted on Baraka's failure to promote claim.

## C.    Other claims

Baraka's asserts that he was forced to work in a segregated work environment, that he was passed over for promotion based upon his race, that Defendant's behavior was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Harris v. McDavid,* 553 So.2d 567, 569-70 (Ala.1989).  Defendant contends that Baraka's segregated work environment claim is barred by the 180-day limitations period of Title VII.  *Cf. Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648 (11th 1993).  Baraka contends

---

[5]         Even if the rumors about the white Blue Circle employee could be proven, that would only demonstrate that the white Blue Circle employee "demeaned and disrespected and treated rudely" a black truck driver. (Baraka's depo., vol. III, at 44.)  That would not be evidence of pretext in the instant case where Baraka *threatened* Butler.  It is legitimate for a company to terminate an employee for physically threatening a customer when said company may not terminate another employee for rudeness or disrespect.

that said violation continued throughout his employment and, therefore, the EEOC claim

was timely filed within 180 days his termination. *Beavers v. American Cast Iron Pipe*

*Co.*, 975 F.2d 792 (11th Cir. 1992). "[T]he Supreme Court clearly recognizes the

distinction ... between the present effects of a one-time violation [*i.e., Ross*] ... and the

continuation of the violation into the present.... Applying this test to the facts of the case

at bar, [this court] conclude[s] that" the alleged disparate work assignments of whites and

blacks at Defendant's plant, "*if it violates Title VII*, constitutes a continuing violation."

*Beavers* at 797-798. Therefore, Baraka's EEOC claim was timely filed with respect to

his segregated work environment claim.

Genuine issues of material fact remain with respect to Baraka's segregated work

environment claim, his failure to promote claim, and his outrage claim. Therefore,

Defendant's motion for summary judgment (doc. 25) is due to be denied insofar as it

addresses said claims.

## II.    *Hill's failure to promote claim*

Hill's complaint states, "Plaintiff Hill has been discriminated against because of

his race, black, in promotions and other terms and conditions of employment as part of

Defendant's pattern and practice of racial discrimination." (Amended Complaint, doc. 17,

at ¶ 33.) Throughout his deposition, Hill makes vague and conclusory allegations based

on rumor and feelings about Defendant's alleged discrimination against black employees.

However, the only claim he documents and argues in opposition to Defendant's summary

judgement is a claim for failure to promote based upon race.

In order to establish a *prima facie* claim for violation of Title VII based on Defendant's failure to promote him, Hill must demonstrate that (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; and (4) Defendant continued to seek applicants for the position or filled the position with a person outside the protected class. *Walker v. Mortham*, 158 F.3d 1177, 1191-1193 (11th Cir. 1998) (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S. Ct. 2363 (1989)). As an African-American, Hill is a member of a protected class. Hill was hired as a strike replacement during August 1994. Since that time, he has applied for numerous transfers and/or promotions within the plant. All of said applications have been denied. In his response and opposition to Defendant's motion for summary judgment (doc. 30), Hill contends that he "was better educated and had more experience than Gill [a white man] and the two white employees who were given the shift foremen's jobs." (doc. 30 at 14.) Thus, Hill's *prima facie* case turns on whether or not he was qualified for the disputed promotions.

Hill has an associate's degree in law enforcement and a substantial work history in that field. (Hill's depo. at 13-14, 22.) However, he had no supervisory experience at the time the disputed employment decisions were made.[6] At said time Hill had worked in

---

6    Hill began working as a "lead man" on his shift at Blue Circle during May 1998 (Hill depo. at 249), several months after the disputed promotion decisions were made.

18

Defendant's plant for approximately three years as a raw mill worker on the concrete side. During his tenure with Blue Circle, Hill has taken seminars in cement technology and basic computer operations. (*Id.* at 14-17, 178-179.)

The disputed positions are (1) the lime pack house coordinator's position awarded to Tony Gill, and (2) the two shift supervisor/ Production Supervisor/ shift foremen's positions awarded to Greg Truesdale and James Broadhead. The lime pack house coordinator supervises work in a newly automated facility in which lime is packed into bags. At the time the promotion decision was made, Hill had no documented supervisory experience and very little computer experience. (*Id* at 14-17, 178-179; *see also* Thompson declaration at ex. C.) Because of his extremely limited experience with automation and technology, Hill was not qualified for the job of pack house coordinator. At the time the shift foremen's positions were awarded Hill had no supervisory experience. (*See* Thompson declaration at ex. C.) Thus, he was not qualified for a job which required him to supervise a shift of workers.

Even if Hill had been qualified for the disputed positions, summary judgment would still be appropriate in this case. Once a Title VII Plaintiff makes out his *prima facie* case of discrimination, the Defendant is allowed to articulate a legitimate, non-discriminatory reason for its actions. If Defendant does so, Plaintiff must then offer evidence that Defendant's legitimate reason is simply a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). If Plaintiff

19

cannot do so, summary judgment is appropriate.

In the case at bar, Defendant articulates a legitimate, non-discriminatory reason for promoting Gill, Truesdale, and Broadhead over Hill. These three men were simply better qualified for the disputed positions. In contrast to Hill's lack of experience in computers and technology, Gill was working toward an associates degree in computer science (Thompson declaration at ¶¶ 8, 10). Thus, he was more qualified to supervise an automated pack house. Likewise, Broadhead and Truesdale had more supervisory experience than Hill at the time they were promoted to shift foremen. (*Id.* at ¶¶ 14-15 and ex. C, G.) Hill offers no evidence that Defendant's promotions based on qualifications was a pretext for discrimination.

Hill has failed to demonstrate his *prima facie* case. Even if he had demonstrated his *prima facie* case, Defendant produced evidence of a legitimate, non-discriminatory purpose for its actions. Hill has not demonstrated that said purpose was a pretext for discrimination. No genuine issues of material fact remain regarding Hill's claims. Therefore, summary judgment is due to be granted in favor of Defendant on Hill's claims.

### Conclusion

No genuine issue of material fact remains with regard to Plaintiff Baraka's hostile work environment claim or with regard to his retaliation claim. No genuine issue of material fact remains with regard to Plaintiff Hill's promotion claim which is his only claim in this action. In accordance with the separate order this day entered:

20

It is therefore **ORDERED** that Defendant's motion for summary judgment (doc. 25) be and hereby is **GRANTED** with respect to Plaintiff Baraka's hostile work environment claim, Plaintiff Baraka's retaliation claim, Plaintiff Hill's promotion claim, and his outrage claim.

Genuine issues of material fact remain regarding Plaintiff Baraka's failure to promote claim, his segregated work environment claim, and his outrage claim.

It is therefore **ORDERED** that Defendant's motion for summary judgment (doc. 25) be and hereby is **DENIED** with respect to Plaintiff Baraka's failure to promote claim, his segregated work environment claim, and his outrage claim.

**DONE and ORDERED** this the _26_ day of July, 1999.

Inge P. Johnson
United States District Judge